## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

_____

|  |  |
|---|---|
| JOHN DOE and JANE DOE, | : |
| individually and on behalf of their | : |
| minor daughter, NANCY DOE, | : |
|  | : |
| *Plaintiffs*, | : |
|  | : |
| v. | : |
|  | : |
| ED BULL, in his official capacity as | : |
| County Attorney of Marion County, | : |
| Iowa, | : |
|  | : |
| *Defendant*. | : |
|  | : |

_____

## COMPLAINT FOR DECLARATORY AND PRELIMINARY AND
## PERMENANT INJUNCTIVE RELIEF

### INTRODUCTION

Plaintiffs in this civil rights action are a teenage girl and her parents.  The

Defendant, Marion County Attorney Ed Bull, has threatened to prosecute the girl

for sexual exploitation of a minor and/or child pornography for her role in the

creation of two digital photographs unless the girl and her parents agree to a pre-

trial diversion program wherein she must discuss why her conduct was wrong,

sign a statement of admission as to her alleged conduct, listen to how she could

potentially have to register as a sex offender for life, and give up her laptop and

cell phone for an unspecified period of time.  One photo in question shows Nancy
Doe, from the waist up, hair entirely covering her breasts and dressed in boy shorts.
The other photo shows Nancy Doe standing upright, clad in the same boy shorts and
wearing a sports bra.  The two photographs, which depict no sexual activity or
display of pubic area, are not illegal under Iowa's crimes code and, indeed, are
images protected by the First Amendment.

Bull nevertheless persists in threatening to prosecute the girl because he has
apparently deemed the photos "sexual" and/or "provocative."  Since there is no
basis to prosecute the girl for posing in photographs that plainly are not child
pornography, in terms of content or production, Bull's threat to prosecute the girl
must be considered retaliation against the plaintiffs for asserting their
constitutional rights – the parents' right to direct their children's upbringing and
the girl's rights both to free expression and against compelled speech – in
refusing Bull's demands. Accordingly, plaintiffs seek declaratory and injunctive
relief to enjoin Bull from bringing the retaliatory criminal charges against the girl
based on her refusal to accede to his demand that she submit to pre-trial diversion
program.

## JURISDICTION AND VENUE

1. This action to vindicate plaintiffs' rights, protected by the First and
Fourteenth Amendments to the U.S. Constitution, is brought under 42 U.S.C. §

2

1983.  This Court has original jurisdiction over this civil rights action under 28

U.S.C. §§ 1331 and 1343.  This Court also has jurisdiction under 28 U.S.C. §§

2201 and 2202 to declare the rights of the parties and to grant all further relief

found necessary and proper.

2. Venue is proper in the Southern District of Iowa under 28 U.S.C. §1391(a)

because defendant is subject to personal jurisdiction within this district and the

events at issue occurred and are occurring within the Southern District of Iowa.

## PARTIES

3. Plaintiffs John and Jane Doe, pseudonyms, are a residents of Knoxville,

Iowa. Their daughter, Nancy Doe, is a teenager.  John and Jane Doe bring this

action to vindicate both their own constitutional rights as parents, as well as

the First Amendment rights of their minor daughter.

4. Defendant Ed Bull, is and at all relevant times hereinafter mentioned was the

County Attorney of Marion County, Iowa. Bull is an elected public official whose

actions in this matter were all taken under color of state law.  Bull is sued only in

his official capacity.

## FACTS

5. The practice of sending or posting sexually suggestive text messages and

images, including nude or semi-nude photographs, via cellular telephones ("cell

phones") or over the Internet, has become known as "sexting."

3

6. Sexting typically involves the subject taking a picture of him or herself using a digital camera or the cell phone's camera feature.

7. The photograph, which is now stored as a digitized image, is then sent via the text-message, Snapchat or other "application" on the cell phone, transmitted by computer through electronic mail ("e-mail"), or posted to an Internet website, most often on the popular social-networking site Facebook.

8. Sexting has become widespread among American youth.  A recent study from Drexel University based on a survey of undergraduate students at a large northeastern university found that more than 50% surveyed had sexted as minors. *Youth Sexting: Prevalence Rates, Driving Motivations & the Deterrent Effect of Legal       Consequences*,       June       2014       (accessible       at http://link.springer.com/article/10.1007/s13178-014-0162-9).

9. In Spring of 2016, the practice of sexting emerged in the small south-central Iowa town of Knoxville.

10.  In March/April of 2016, Knoxville School District officials were confronted with the issue when two male students were discovered using the printers in the school library to print paper copies of images that depicted both male and female individuals, many of them students enrolled in the School District and some of them semi-nude or nude and some nude but with an emoji covering their private parts.

4

11.   Among the photographs the boys printed that were discovered by school officials were two photographs of Nancy Doe.  Neither photograph showed Nancy Doe in the nude.

12.   Nancy Doe was fourteen in March of 2016 and was a freshman at Knoxville High School.

13.   Nancy was an active athlete who played volleyball, softball, basketball and soccer.

14.   According to the School District, male students had apparently been trading the photos of the girls on their cell phones and that the boys in question were collecting and printing these photographs.

15.   Soon after discovering the photographs, Carolyn Jones, a Knoxville High School guidance counselor, called Jane Doe on April 5, 2016, to discuss the discovery of some photographs of her daughter.

16.   Coincidently, Nancy Doe went home from school that day unaware of any discovery of photographs of her by school officials.

17.   Carolyn Jones told Jane that two photographs of her daughter had been discovered at the school and when pressed, would only describe the photographs as "inappropriate."

18.   Jones also informed Jane that there were other pictures discovered by school officials that did not depict her daughter.

19.  Jones indicated that at this point, school officials were turning the photographs and the matter over to the Knoxville Police Department and that the Does would be contacted by the police who would be conducting an investigation.

20.  Immediately after speaking with Jones at about 2:30 or 3:00 PM, Jane left work to pick up her husband and begin their hour-long commute home.

21.  Frantic with thoughts of what these "inappropriate" photographs of their daughter could possibly be, Jane repeatedly tried to call their daughter on the way home, but after multiple texts and calls received no response.

22.  Arriving home, the Does found Nancy asleep on the couch where she had been all afternoon because of the illness that had sent her home from school.

23.  The Does immediately woke Nancy up, asked her for her cell phone, and told her what the guidance counselor, Ms. Jones, had shared with them.

24.  The Does asked Nancy if she had sent "inappropriate" pictures to a boy or any other peers.

25.  Embarrassed, Nancy Doe told her parents that on March 20th or March 21st, she had sent two photos to M.E., a young high school peer.

26.  The photos, Nancy said, were photos she took of herself in her bedroom mirror and sent to M.E. via the application Snapchat.

27.  Nancy told her parents that the photographs she sent to M.E. did not show any nudity.

6

28.   M.E. had been asking for Nancy the send of herself the entire previous week and had encouraged her to send the photos by sending her photos of himself, some of which were sexually explicit.

29.   Nancy never asked for the photographs and did not want the photographs of M.E. and, in fact, Nancy refused to respond with like photos.

30.   Nancy also told her parents that in the days after she sent her two photos to M.E. she was questioned by a friend about those photos.

31.   Nancy discovered, she said, that M.E. had shared the photos she sent with other students at Knoxville High School via group text messages.

32.   When pressed by her parents, Nancy again reiterated that the photos she sent to M.E. were not inappropriate or sexually explicit and did not contain nudity.

33.   Asked if she still had the photographs on the phone in her parents' possession, Nancy said she had deleted them.

34.   Dealing with the newness of the situation before them and still unable to see the photographs they were hearing different things about, the Does informed their daughter that they would be keeping her cell phone and would address with her later how they would handle the situation.

35.   Given the situation, the Does kept Nancy home from school April 6, 2016, as well.

36. Also on April 6, 2016, the Knoxville Police Department contacted the Does and informed that they were investigating the issue of students "sexting" at Knoxville High School, including photos that they had been lead to believe depicted their daughter.

37. The Does were asked to allow investigators to speak with Nancy at school that day.

38. The Does informed the Department that under no circumstances should the police or other school officials speak to Nancy or otherwise interview her about the situation. However, the Does said that they would come sit with the police for an interview.

39. Jane Doe called school officials and likewise explicitly told them that Nancy was not to be interviewed about these matters without the parent's express permission.

40. That evening, John and Jane Doe went to the Knoxville Police Department to meet with investigators Sgt. Keller and Lt. Fuller.

41. The Does immediate concern was seeing the photographs in question that everyone was apparently talking about.

42. Investigators laid out two papers photographs in front of the Does and asked them if they could identify the young woman in question as their daughter.

8

43. One of the photos showed Nancy taking her picture in her bedroom mirror wearing grey and black boy-shorts and an opaque sports bra.

44. The second photo depicted Nancy in the same boy-shorts without the sports bra but with Nancy's hair entirely covering her breasts.

45. Neither photograph depicted sexual activity and neither showed Nancy's genitalia, pubic area or contained any nudity.

46. The Does were perplexed and asked investigators whether these photographs of their daughter were the photos the school was apparently concerned about.

47. Yes, investigators said, but investigators also told the Does there were photos of other students that were graphic and explicit that they were showing to parents in an attempt to identify the subjects.

48. Again receiving assurances that these two photos were they only photographs of Nancy, the Does asked what the fuss was about.

49. Investigators indicated that they believed the fuss was about the other images school officials had discovered and that Nancy and the Does did not have anything to worry about.

50. Leaving the Police Department, the Does were confused why their daughter was being investigated by the police at all.

51. The photographs the Does saw were less "racy" than photographs they see in fashion magazines and on television every day.

52. Despite this, the Does were concerned that Nancy had sent any photographs to M.E. and decided to keep their daughter's cellphone for the time being until they could determine what was the best course for their family in terms of permanently addressing the issue.

53. The following morning, April 7, 2016, the Does received an email from the Knoxville School System Superintendent, Cassi Pearson.

54. Pearson's email informed Knoxville parents that a potential issue had been discovered where students had shared "inappropriate content through their cell phones."

55. The email additionally told parents that school officials were "cooperating with law enforcement."

56. The story of "nude" photographs being shared among Knoxville High School students broke in the media soon after the Does spoke with investigators, and on April 14, 2016, Knoxville Police Lt. Aaron Fuller told the media that the Department was continuing its investigation into the matter and that as of that morning, no charges had been filed against any of the students.  Fuller could not say how many students were involved but he did say that once the investigation

was complete, the results would be shared with Marion County Attorney Ed Bull and Juvenile Court Services.

57.   After much soul searching over the next week and many discussions with Nancy, the Does decided to erase many of the social media applications from Nancy's phone before returning it to her with new restrictions.

58.   Nancy was required to inform her parents of her password at all times and to make her phone accessible to them whenever they liked.

59.   John Doe told her that he would be checking her phone randomly and, in fact, since the time of the incident, he has done that.

60.   The Does heard nothing further about the police investigation or incident until April 27, 2016, when they received a letter from Kristi Dotson, the Juvenile Court Officer from Marion County.

61.   Dotson's letter indicated that a complaint concerning Nancy had been made to Juvenile Court Services by the Knoxville Police Department and that the alleged violation was Sexual Exploitation of a Minor.

62.   Nancy and at least one of her parents were requested to "appear for an intake interview" on Tuesday, May 24, 2016.

63.   This letter was the first indication to the Does of what crime police and/or prosecutors were alleging their daughter had committed and seeing this fact in

black and white after viewing the photographs in question only served to confuse them even more.

64.   The Does were skeptical that any such meeting or interview would change their mind about their daughter NOT having committed any crime, but decided to take a "wait and see" approach for now.   Perhaps the police investigation had discovered new facts after they sat for the interview which would change their mind about things.

65.   The Does were concerned about sending their daughter to the meeting because they were adamant that they did not want her labeled and/or shamed.

66.   What the Does did know is that even if they decided to attend the interview/meeting, they would be unable to do so on May 24, 2016.

67.    John Doe reached out to Kristi Dotson and informed her they had a scheduling conflict and could not attend the interview/meeting and because of that, Dotson asked them to personally come in on May 25, 2016.

68.   In the meantime, on March 24, 2016, a meeting was held in the large courtroom on the third floor of the Marion County Courthouse.

69.   Based on information and belief, Marion County Attorney Ed Bull was present and at least partially led the meeting at which at least 30 students and their parents attended.

70. Apparently a role call or other tally was taken at the meeting in which it was made clear that Nancy Doe and her family were not participating.

71. County Attorney Bull informed all the students present that they could all be charged with child pornography charges and/or sexual exploitation of a minor charges and that such charges would require them to register to as a sex offender for life.

72. According to reports the Does received, County Attorney Bull engaged in "slut shaming" by informing the female students present that young ladies did not send such explicit photos to boys.

73. At this meeting, Bull informed the students and parents that they could avoid they charges and sexual registry by engaging in a pre-trial diversion program which included requirements that the students:

  a. Engage in community service;

  b. Complete a reeducation class on the dangers and consequences of sexting;

  c. Give up their laptops for an unspecified period of time;

  d. Give up their cellphones for an unspecified period of time; and

  e. Provide juvenile court services with a confession of their conduct.

74. On Wednesday, May 25th, John Doe met with Kristi Dotson of Juvenile Court Services.

13

75. Doe immediately asked Dotson whether she had seen the images of Nancy Doe that were reportedly the reason for this interview.

76. Dotson admitted that no, she had not seen Nancy's photos. Dotson said she was just interviewing the kids and parents implicated in the sexting scandal by the police and County Attorney Bull.

77. At that point, Doe expressed exasperation as to why he was even there because if someone would just look at the photos of Nancy, they would realize there was nothing even remotely criminal about them.

78. Once again, Dotson informed Doe that she was just conducting intake interviews but that she would check with County Attorney Bull about the specifics of Nancy's photographs and situation and that she would follow up.

79. Dotson told Doe she would do this at their next meeting and that Nancy would be required to be present for that meeting.

80. In addition, Dotson provided Doe with a detailed questionnaire for Nancy and the family to fill out, a questionnaire that delved into the intimate details of how the Does parented their daughter and how they disciplined her regarding the photographs.

81. Given that John Doe has Fridays off, Dotson and Doe agreed to meet again on Friday, May 27, 2016, at the Courthouse and that in the meantime,

14

Dotson would get more specifics from County Attorney Bull about Nancy's photos.

82.  At the appointed time, John and Nancy Doe appeared at the Courthouse for their meeting/interview with Juvenile Court Services.

83.  Instead of a meeting with Kristi Dotson, however, John and Nancy met with a male colleagues of Dotson with Juvenile Court Services.

84.  Once again, Doe began the meeting by asking if the interviewer had viewed Nancy photos.

85.  The gentlemen indicated that he had not seen the photographs but that such details did not matter.  After speaking with County Attorney Bull, Nancy would be criminally charged just like the other students if she did not agree to the pre-trial diversion program offered by Bull.

86.  At this point, John Doe indicated the meeting was over and that there was no sense in Nancy being interviewed over something that they had not even bothered to look at.

87. Doe also told Juvenile Services that they would not be submitting the invasive questionnaire.

88.  The gentleman with Juvenile Court services told John Doe that the family had until June 2, 2016, to decide whether to accept the pre-trial diversion program or be criminally charged with sexual exploitation of a minor.

89.   John Doe left the meeting frustrated with Ed Bull's decision to treat his daughter as part of a pack instead of viewing the facts of her situation individually.

90.   The Does decided it was time to reach out for legal help and they called and spoke with Matthew Lindholm of Gourley, Rehkemper & Lindholm, PLC.

91.   After meeting with Lindholm on Wednesday, June 1, 2016, Lindholm called and spoke with County Attorney Bull.

92.   Lindholm informed Bull that based on his understanding of the pictures in question, Nancy Doe had not been involved in any criminal conduct.   Bull disagreed and believed that like all of the students involved in the Knoxville sexting scandal, Nancy could be charged with sexual exploitation of a minor based on the two photographs the boys had printed and that had been distributed to others via M.E.

93.   Lindholm asked if there was something he was missing because the two photographs described to Lindholm were not graphic, contained no depictions of sexual activity or simulated sexual activity, and, in fact, contained no nudity.

94.   Bull repeated to Lindholm that unless the Does and their daughter accepted the diversion program he would prosecute Nancy for sexual exploitation of a minor and if adjudicated delinquent by the juvenile court, Nancy would be required to register as a sex offender for life under Iowa Code Section 692A.1(1)

16

which indicates that a conviction for purposes of the registry includes juveniles who have been adjudicated delinquent.

95.    The crime of Sexual Exploitation of a Minor is codified in Iowa Code Section 728.12 which prohibits an individual from inducing, enticing or causing or attempting to cause a minor to engage in a prohibited sexual act or in the simulation of a prohibited sexual act.  Iowa Code Section 728.12(1).

96.    Section 728.1 defines "prohibited sexual act" as any of the following:

   a.  A sex act as defined in section 702.17.

   b.  An act of bestiality involving a minor.

   c.  Fondling or touching the pubes or genitals of a minor.

   d.  Fondling or touching the pubes or genitals of a person by a minor.

   e.  Sadomasochistic abuse of a minor for the purpose of arousing or satisfying the sexual desires of a person who may view a depiction of the abuse.

   f.  Sadomasochistic abuse of a person by a minor for the purpose of arousing or satisfying the sexual desires of a person who may view a depiction of the abuse.

   g.  Nudity of a minor for the purpose of arousing or satisfying the sexual desires of a person who may view a depiction of the nude minor.

97.   Section 702.17 defines "sex act" or "sexual activity" as: any sexual contact between two or more persons by:  penetration of the penis into the vagina or anus; contact between the mouth and genitalia or by contact between the genitalia of one person and the genitalia or anus of another person; contact between the finger or hand of one person and the genitalia or anus of another person, except in the course of examination or treatment by a person licensed pursuant to chapter 148, 148C, 151, or 152; or by use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus.

98.   Full or partial nudity is defined elsewhere in the Iowa Code as the showing of any part of the human genitals or pubic area or buttocks, or any part of the nipple of the breast of a female, with less than fully opaque covering.  Iowa Code 709.21(2)(a).

99.   Neither of the photos of Nancy Doe depicted a prohibited sex act.

100.   Neither of the photos showed Nancy's genitalia or pubic area and finally neither of the photos in question showed nudity, whether full or partial.

101.   Nancy Doe did not violate the criminal statute outlined above by taking the photographs of herself and sending them to M.E.

102.   Nancy has been threatened with prosecution simply for appearing in the images.

18

103. Nancy has violated no other statute of the State of Iowa by photographing herself in private in her underwear and sports bra.

104. After their June 1, 2016, telephone call, Lindholm exchanged a series of emails with Bull where he pointed out the flaws in Bull's legal reasoning but all to no avail. Bull continued to threaten prosecution of Nancy.

105. Bull indicated, and media coverage confirmed, that all the other students implicated in the Knoxville sexting scandal took or were coerced into taking the diversion program.

106. As late as Tuesday, September 20, 2016, Bull told Lindholm by email that if Nancy Doe and her parents did not agree to the diversion program and all of its requirements, Bull would file criminal charges against Nancy.

107. Bull's threat to prosecute Nancy criminally is completely without merit, and thus is made in bad faith as he has no, and can have no, reasonable expectation of obtaining a conviction of Nancy or an adjudication of Nancy as delinquent.

108. Indeed, the two photographs at issue are expression that is protected by the First Amendment, which means that any prosecution brought by Bull would be unconstitutional.

109. Unless the photographs were produced by abusing or coercing Nancy, which they were not, or they show Nancy engaged in sexual activity or

19

lasciviously displaying her genitals, and again they do not, the photos are expression protected by the First Amendment to the U.S. Constitution.

110. Moreover, Bull's decision to prosecute the subject of the photographs, Nancy Doe herself, is unprecedented and stands anti-child-pornography laws on their head. Anti-child-pornography laws are intended to protect the children shown in the photos and videos, and plaintiffs' counsel has found no published Iowa or federal court decision sustaining such a prosecution against minors shown in such pictures.

111. The minor in the photos, Nancy Doe, is, if anything, the victim in this case. Someone else — not her — disseminated the photos without her permission to a large group of people.

112. Bull's threatened prosecution chills Plaintiffs' First Amendment right of expression, causing them concern about whether they may photograph their daughters, or whether Nancy may allow herself to be photographed, wearing a two-piece bathing suit.

113. Nancy Doe will in the near future want to be photographed in her bathing suits, for instance during the summer when they go to a swimming pool or the beach, to which Nancy Doe's parents have no objection. She and they are, however, chilled in their ability to take such photographs because of concern whether Bull will find them "provocative" and therefore worthy of prosecution.

114.   Furthermore, Bull's insistence that the plaintiff parents force their daughter to attend a re-education course interferes with the parents' right to direct and control their children's upbringing.  Among other things, the course requires Nancy to gain an understanding of how her actions were wrong and to admit in writing to a crime that does not exist under these facts.

115.   While Bull may be able to force the other students implicated in the Knoxville sexting scandal to participate in such a program as part of an informal disposition when there is probable cause to believe such students committed a crime, in the absence of such evidence the threatened prosecution to force Nancy to participation violates the parents' Fourteenth Amendment right to direct their child's upbringing.

116.  Bull's demand that Nancy participate in the re-education program, which would require her to write a note admitting how her actions were wrong, violates the Nancy's right to be free from compelled speech.

117. Absent injunctive relief, preliminary and permanent thereafter, plaintiffs' constitutional rights will be irreparably harmed.  Additionally, since Bull enjoys prosecutorial immunity, plaintiffs have no remedy at law should this Court deny injunctive relief.

## FIRST CAUSE OF ACTION
## (RETALIATION IN VIOLATION OF FIRST AMENDMENT RIGHT TO FREE EXPRESSION)

21

118.   Bull may personally disapprove of the fact that Nancy photographed herself as she did, but absent a legitimate basis to believe that Nancy committed a crime, he may not threaten her with serious aggravated misdemeanor charges in order to force her participation in a re-education program and probation.

119.   The two photographs of Nancy Doe were not made by abusing her, were not made for commercial purposes, and do not depict sexual activity or lascivious display of the genitals or pubic area.  They are, therefore, expression protected by the First Amendment to the U.S. Constitution.

120.   Bull's threat to charge Nancy Doe with aggravated misdemeanor criminal charges unless she agrees to participate in a re-education program because she photographed herself in a way that Bull disapproves constitutes retaliation in violation of the First Amendment to the U.S Constitution and chills their exercise, and their parents' exercise, of First Amendment rights.

## SECOND CAUSE OF ACTION
## (RETALIATION IN VIOLATION OF FIRST AMENDMENT RIGHT TO BE FREE FROM COMPELLED EXPRESSION)

121.   Bull's threat to file criminal charges against Nancy Doe, charges for which there is absolutely no evidence or cause, unless Nancy participate in a program that requires them to write admission of how her actions were wrong, constitutes

retaliation against Nancy for exercising her right to be free from compelled speech, a right protected by the First Amendment to the U.S. Constitution.

### THIRD CAUSE OF ACTION
### (RETALIATION AGAINST PLAINTIFF PARENTS FOR EXERCISING THEIR FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS RIGHT AS PARENTS TO DIRECT THEIR CHILDREN'S UPBRINGING)

122.  Bull's illegitimate use of government authority to coerce the plaintiff parents to send their daughter to a re-education course that, among other things, would direct their daughter to gain an understanding of how her actions were wrong, infringes on the plaintiff parents' Fourteenth Amendment substantive due process right to direct and control their child's upbringing.

### PRAYER FOR RELIEF

WHEREFORE, in light of the foregoing, Plaintiffs respectfully request the following:

(a)   A declaratory judgment that Bull's threat to prosecute Nancy Doe as shown in the two photographs, which under Iowa law are not child pornography or any other crime and are, indeed, protected expression under the First Amendment, is unlawful retaliation that violates the First Amendment;

(b)   A declaratory judgment that Bull's threat to prosecute Nancy Doe as shown in the two photographs, a threat that has no basis in Iowa

23

criminal law, interferes with the plaintiff parents' right to direct and control their child's upbringing, a right safeguarded by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution;

(c)   An injunction, preliminary and permanent thereafter, enjoining Bull, his employees, agents, assigns and all those acting in concert with him, from initiating criminal charges against plaintiff Nancy Doe for the two photographs at issue, or for any other photographs of Nancy unless the images depict sexual activity or exhibit the genitals in a lascivious way.

(d)   Award plaintiffs the costs incurred in this litigation, including attorneys' fees pursuant to 42 U.S.C. § 1988; and

(e)   such other relief as the Court deems just and proper.


Wednesday, September 28, 2016

Respectfully submitted,

*s/Glen S. Downey*
Glen S. Downey                         AT0012428

The Law Offices of Glen S. Downey, LLC
301 East Walnut St., Ste. 4
Des Moines, IA  50309
Tel: (515) 259-9571
Fax: (515) 259-7599
glen@downey-law.net

s/Robert G. Rehkemper

| Robert G. Rehkemper | AT0006553 |

s/Matthew T. Lindholm

| Matthew T. Lindholm | AT0004746 |

440 Fairway Drive, Suite 210
West Des Moines, Iowa 50266
Telephone: (515) 226-0500
Facsimile: (515) 244-2914
rgrehkemper@grllaw.com
mtlindholm@grllaw.com

*Attorneys for Plaintiffs*